UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN VINCENT FORD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JAHANGIRI,<br><br>　　　　Defendant. | No. 2:15-cv-2588 GEB DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff contends defendant Jahangiri was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment when he did not take appropriate measures after plaintiff threatened to commit suicide. Before the court is defendant's motion for summary judgment and plaintiff's motions to amend his complaint, for a jury trial, and for the appointment of counsel. For the reasons set forth below, the court will recommend defendant's motion be granted and plaintiff's motions be denied.

**BACKGROUND**

**I.　　Allegations of the Complaint**

Plaintiff alleges that on August 28, 2014, while incarcerated at the California Health Care Facility ("CHCF") a nurse claimed that plaintiff had threatened to kill her. The following day

1

plaintiff was brought to a meeting of the IDTT,[1] which included defendant Dr. Jahangiri. Dr. Jahangiri told plaintiff that because he had threatened to kill a nurse, he was going to be discharged back to prison. Plaintiff denied making the threat and told Jahangiri that if he was sent back to prison without treatment, he would kill himself. He then stated, "In fact, if I go back to my room I <u>will</u> kill myself." Jahangiri stated, "so be it then." Plaintiff found something in "that room" that he used that night to "slice his throat." Plaintiff was discovered and rushed to San Joaquin General Hospital. (ECF No. 1 at 3.)

## II. Procedural History

Plaintiff filed his complaint here on December 14, 2015. (ECF No. 1.) He identified Jahangiri and CHCF as defendants. On screening, the court found plaintiff stated a cognizable Eighth Amendment deliberate indifference claim against Jahangiri and dismissed the claim against CHCF. (ECF No. 11.)

After the parties conducted discovery, defendant Jahangiri filed a motion for summary judgment on June 27, 2017. (ECF No. 61.) Plaintiff filed three documents in opposition (ECF Nos. 68, 68-1, 69) and defendant filed a reply (ECF No. 71).

# MOTION FOR SUMMARY JUDGMENT

## I. Legal Standards

### A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[1] IDTT stands for Interdisciplinary Treatment Team. According to plaintiff, his IDTT included nurses, psychiatric techs, a psychologist, a psychiatrist, a social worker, and the unit supervisor. (Compl. (ECF No. 1 at 3).)

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a

retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

////

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**C. Eighth Amendment Legal Standards**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

////

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter

Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

## II. Material Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 61-2.) Plaintiff submitted two filings in opposition to defendant's motion. Plaintiff's first filing is an opposition brief. (ECF No. 69.) In the second filing, plaintiff responds to each of the undisputed facts identified by defendant. (ECF No. 68 at 5-10.) In addition, plaintiff provides his declaration. (ECF No. 68-1.) In his reply brief, defendant objects to plaintiff's statement of disputed facts because, while plaintiff attaches exhibits to both of his filings, plaintiff does not explicitly identify evidence to support his contentions. (See ECF No.

71.) Defendant also objects to plaintiff's exhibits and declaration because they cannot be authenticated, contain hearsay, and contain evidence that is not relevant. (ECF No. 71-1.) Because the court finds below that the parties dispute only one material fact, of which plaintiff has personal knowledge, defendant's objections to the remaining evidence need not be addressed.

### A. Undisputed Facts

The events at issue occurred while plaintiff was incarcerated at CHCF. Defendant Dr. Jahangiri is a psychiatrist employed by California's Department of State Hospitals. (DSUF #1.[2]) Jahangiri provides in-patient psychiatric services at CHCF. (DSUF #2.) CHCF provides acute and intermediate level treatments programs for mentally ill patients in the California Department of Corrections and Rehabilitation ("CDCR") who need stabilization and/or rehabilitation. (DSUF #3.)

Prior to August 13, 2014, plaintiff was on Discretionary Program Status ("DPS") at CHCF. (DSUF #6.) On DPS, plaintiff's activities were limited to his room and he had special staffing. (Id.) Jahangiri first saw plaintiff on August 13, 2014 at an IDTT meeting. (DSUF ##4, 8.) At that meeting, it was determined that plaintiff's DPS should be discontinued and he should be moved to "Stage 1" so he could have more access to activities. (June 12, 2017 Decl. of M. Jahangiri ("Jahangiri Decl.") (ECF No. 61-2), ¶ 8.)

Jahangiri next saw plaintiff on August 18, 2014. (DSUF #15.) At that time, plaintiff had been placed back on DPS due to an incident on August 15 when he got angry at staff and punched a door with a hand he had recently fractured. (DSUF #16.) At the August 18 appointment, plaintiff was again moved to Stage 1 from DPS in light of his sustained compliance with unit routine. (DSUF #20.)

Jahangiri next saw plaintiff at his IDTT meeting on August 28, 2014 at 9:55 a.m. (DSUF #21.) Plaintiff was back on DPS due to reports that he threatened to kill a staff member, incessantly banged his door, and yelled profanities and racial slurs at staff. (DSUF #22.) At that meeting, plaintiff expressed anger at staff, particularly staff who wrote him up. (DSUF #25.)

---

[2] Plaintiff's non-opposition to each of these points is reflected in his response to the DSUF. (ECF No. 68 at 5-10.)

8

Plaintiff was informed at that time that he would be discharged from CHCF to an Enhanced Outpatient Program at CDCR. (DSUF #33.) It is undisputed that plaintiff was upset then, and continues to be upset, that he has not received sex offender treatment and, in particular, that he has not been transferred to Atascadero or Coalinga State Hospitals for that treatment.[3] (See, e.g., Plt.'s Disputed Facts #62 (ECF No. 68 at 9).)

In his declaration, Dr. Jahangiri describes what he found in his examination of plaintiff at the August 28 meeting. (Jahangiri Decl., ¶ 10.c.) Jahangiri found plaintiff to be "calm and cooperative but argumentative and self-advocating." He noted that plaintiff expressed no suicidality. Dr. Jahangiri ordered a continuation of plaintiff's medication and that plaintiff have staggered safety checks every ten minutes. (DSUF #36.) He ordered the staggered safety checks based on plaintiff's DPS status and his oppositional attitude during the IDTT meeting. (DSUF #40.) In addition, Jahangiri felt it would be prudent to prevent any impulsive self-harm. (DSUF #41.) Ten-minute staggered rounds are performed by staff members other than those who are assigned to conduct welfare checks every fifteen minutes. (DSUF #37.) The purpose of staggered checks is to observe the patient at random, unpredictable intervals no longer than ten minutes apart (i.e. ten minutes; then two minutes then six minutes, etc.). (DSUF #38.) Staggered rounds are in addition to the fifteen-minute rounds, not in lieu of them. (DSUF #39.)

At some point after the August 28 meeting and before plaintiff was discovered injured, plaintiff broke a piece of metal off of a wrist brace he was wearing. (Transcript of Plt.'s Mar. 23, 2017 Depo. ("Plt.'s Depo.") at 38.) Plaintiff had been given the brace after he punched a door and broke his hand about three weeks earlier. (Id.) He then sharpened the metal on the floor of his cell. He broke off the arm of his glasses as well to expose his jugular vein so he could use the metal to saw at it. (Id.)

Plaintiff was found in his cell with a wound to his neck at 2:24 a.m. on August 30, 2014. (DSUF #42.) During the over 40 hours between the August 28 IDTT meeting, and the discovery

---

[3] The court notes that plaintiff raises this issue repeatedly throughout his filings. However, plaintiff's complaint is limited to his claim that Jahangiri acted with deliberate indifference when he failed to take more protective measures after plaintiff threatened suicide on August 28, 2014. Plaintiff confirmed that description of his claim at his deposition. (Plt.'s Depo. at 14, 28-29.)

9

of plaintiff's injury, plaintiff was seen hundreds of times by numerous staff members. First, he was seen 258 times by staff as part of the staggered safety checks. (DSUF #43.) None of the staff notes show any activities by plaintiff indicative of self-injury. (DSUF #44.) Second, plaintiff was seen 161 times on the regular fifteen-minute welfare checks. (DSUF #46.) Third, registered nurses made contact with plaintiff nine times. (DSUF #48.) The notes of those contacts do not reflect any self-injurious intent by plaintiff. (Id.) Fourth, plaintiff was seen several times on August 28 and August 29 to be provided medications. (DSUF #50.) Fifth, on August 29, 2014 at 7:50 p.m., plaintiff was escorted to the day room to watch TV. (DSUF #51.) During these 40 hours after the IDTT meeting, Dr. Jahangiri had no interactions with plaintiff and was not contacted by any staff member regarding plaintiff's care. (DSUF #52, 53.)

**B. Disputed Facts**

The one material fact in dispute is whether plaintiff informed Jahangiri that he intended to attempt suicide. According to plaintiff, he informed Jahangiri that he intended to do so as soon as he returned to his cell. (Compl. (ECF No. 1 at 3); Plt.'s Depo. at 24.) According to Jahangiri, plaintiff "expressed no suicidal ideation during his IDTT meeting on 8/28/14." (Jahangiri Decl., ¶ 10.)

**III.    Analysis**

Plaintiff contends Jahangiri exhibited deliberate indifference when he failed to institute more restrictive measures after plaintiff threatened suicide at the August 28 IDTT meeting. Plaintiff claims Jahangiri should have had plaintiff "removed in handcuffs, placed in a F[e]rguson gown, and put in a room stripped of all contraband for his safety." (Compl. (ECF No. 1 at 3).) Jahangiri argues first that plaintiff did not express any suicidal ideations at the August 28 meeting and also that the measures he ordered show that he did not exhibit deliberate indifference to foreseeable risks to plaintiff.

Considering the facts in the light most favorable to plaintiff, the court will assume plaintiff did, in fact, tell Jahangiri at the August 28 IDTT meeting that he intended to commit suicide when he returned to his cell. The court then examines Jahangiri's conduct in response. It is clear that plaintiff's behavior at the August 28 IDTT meeting gave Jahangiri cause for concern. Jahangiri

initiated much more frequent welfare checks. Plaintiff does not contest that he was checked on by staff over 400 times in a little over 40 hours. Rather than being indifferent to plaintiff's care, Jahangiri, based on his knowledge of plaintiff's medical history, his prior examinations of plaintiff, and his observations of plaintiff during the August 28 meeting, determined that plaintiff required a higher level of monitoring for self-injurious behavior.

Plaintiff argues that Jahangiri should have instituted certain procedures as soon as plaintiff stated that he intended to commit suicide. However, plaintiff provides no evidence to support an argument that these procedures were medically necessary. Plaintiff does not show that the actions Jahangiri took were medically unsound or unreasonable, much less that they demonstrate Jahangiri acted with deliberate indifference.

In addition, plaintiff's suicide attempt occurred over 40 hours after Jahangiri saw plaintiff. During that time, Jahangiri had no reason to think the measures he had put in place were not effective. He received no reports from the staff members performing frequent welfare checks and delivering medications or from the nursing staff who had nine contact visits with plaintiff that plaintiff was in imminent danger of harming himself.

The 40-hour time period that elapsed between the August 28 meeting and plaintiff's self-injurious behavior also defeats a finding of causation. Plaintiff did not immediately attempt suicide as he contends he threatened to do at the August 28 meeting. Rather, a good deal of time elapsed during which plaintiff had interactions with many staff members who provided him medications, escorted him to the dayroom, and checked on his welfare during nursing contact visits. It cannot be said that plaintiff's actions taken 40 hours after he allegedly made the statement to Jahangiri were reasonably foreseeable in this situation. Cf. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (en banc) (to establish deliberate indifference, a plaintiff must show the prison official's actions were the actual and proximate cause of the constitutional deprivation).

The Eighth Amendment standard is a high one – plaintiff must show more than "negligence" or "medical malpractice." Broughton, 622 F.2d at 460. "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." Lemire v. CDCR, 726

F.3d 1062, 1081–82 (9th Cir. 2013) (internal citations omitted). Plaintiff's difference of opinion with Jahangiri about the proper course of treatment is not actionable. See Cano v. Taylor, 739 F.3d 1214, 1217 (9th Cir. 2014); Toguchi, 391 F.3d at 1058-60. From the record before this court, and even assuming, without finding, that plaintiff told Jahangiri he was suicidal, Jahangiri's actions do not demonstrate deliberate indifference under the Eighth Amendment to plaintiff's health and safety.

**IV.     No Cognizable State Law Claim**

Section 945.4 of the Government Claims Act provides that

> [n]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division *until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board*, in accordance with Chapters 1 and 2 of Part 3 of this division.

Cal. Gov't Code § 945.4 (emphasis added). Section 950.6 provides that

> "[w]hen a written claim for money or damages for injury has been presented to the employing public entity: (a) a cause of action for such injury may not be maintained against the public employee or former public employee whose act or omission caused such injury *until the claim has been rejected, or has been deemed to have been rejected, in whole or in part by the public entity*."

Cal. Gov't Code § 950.6 (emphasis added). See also Creighton v. City of Livingston, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) ("A plaintiff's supplemental state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the [Government] Claims Act before commencing a civil action.") (citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995)).

The claims-presentation requirement "constitutes an element of any cause of action arising under the Government Claims Act." Mohsin v. Cal. Dep't of Water Res., 52 F. Supp. 3d 1006, 1017-18 (E.D. Cal. 2014). Failure to meet this requirement subjects a claim to dismissal for failure to state a cause of action. Yearby v. California Dep't of Corr., No. 2:07–cv–2800 JAM KJN P, 2010 WL 2880180, at *4-5 (E.D. Cal. July 21, 2010), rep. and reco. adopted, 2010 WL 3769108 (E.D. Cal. Sept. 22, 2010). "Plaintiffs must 'allege facts demonstrating or excusing

12

compliance with the claim presentation requirements.'" Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008) (quoting State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004) (holding that "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action")).

Plaintiff does not contest defendant's assertion that he failed to file a claim with the Government Claims Board. (Plt.'s Depo. at 50; ECF No. 69 at 3.) Further, he provides no basis to excuse compliance with the claim filing requirement. Accordingly, plaintiff fails to state a cognizable state-law cause of action.

## PLAINTIFF'S MOTIONS

In his motion to file an amended complaint, plaintiff simply states that he has a witness to testify at trial and wishes to add a request for compensatory relief. (ECF No. 77.) Because these "amendments" do not change the court's analysis herein, plaintiff's motion should be denied. Plaintiff's motion for a jury trial (ECF No. 78) should be denied as moot. Finally, plaintiff moves for the appointment of counsel because he "may not have been proficient with the legalities of this case." (ECF No. 78.) For the reasons stated in the court's denial of plaintiff's prior request for counsel, plaintiff's current motion should be denied as well. (See ECF No. 73.)

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 61) be granted; and
2. Plaintiff's motions to amend his complaint, for a jury trial, and for the appointment of counsel (ECF Nos. 77, 78) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties

////

are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 11, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/ford2588.msj